## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

**RICHARD WELSH,**

**Plaintiff,**

vs.

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

**Defendant.**

**No. C10-0120**

**RULING ON JUDICIAL REVIEW**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| *I.* | *INTRODUCTION* | 2 |
| *II.* | *PROCEDURAL BACKGROUND* | 2 |
| *III.* | *PRINCIPLES OF REVIEW* | 3 |
| *IV.* | *FACTS* | 5 |
| | *A.*    *Welsh's Education and Employment Background* | 5 |
| | *B.*    *Administrative Hearing Testimony* | 5 |
| |     *1.*    *Welsh's Testimony* | 5 |
| |     *2.*    *Vocational Expert's Testimony* | 6 |
| | *C.*    *Welsh's Medical History* | 7 |
| *V.* | *CONCLUSIONS OF LAW* | 12 |
| | *A.*    *ALJ's Disability Determination* | 12 |
| | *B.*    *Objections Raised By Claimant* | 14 |
| |     *1.*    *RFC Assessment and Hypothetical Question* | 15 |
| |     *2.*    *Vocational Expert Testimony and the DOT* | 17 |
| | *C.*    *Reversal or Remand* | 20 |
| *VI.* | *CONCLUSION* | 21 |
| *VII.* | *ORDER* | 21 |

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Richard Welsh on September 20, 2010, requesting judicial review of the Social Security Commissioner's decision to deny his application for Title II disability insurance benefits. Welsh asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits. In the alternative, Welsh requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On November 27, 2006, Welsh applied for disability insurance benefits. In his application, Welsh alleged an inability to work since August 12, 2006 due to shoulder and hand problems. Welsh's application was denied on April 27, 2007. On October 3, 2007, his application was denied on reconsideration. On November 7, 2007, Welsh requested an administrative hearing before an Administrative Law Judge ("ALJ"). On March 11, 2009, Welsh appeared via video conference with his attorney before ALJ Marilyn P. Hamilton for an administrative hearing.[1] Welsh and vocational expert Carma Mitchell testified at the hearing. In a decision dated May 7, 2009, the ALJ denied Welsh's claim. The ALJ determined that Welsh was not disabled and not entitled to disability insurance benefits because he was functionally capable of performing other work that exists in significant numbers in the national economy. Welsh appealed the ALJ's decision. On July 19, 2010, the Appeals Council denied Welsh's request for review. Consequently, the ALJ's May 7, 2009 decision was adopted as the Commissioner's final decision.

On September 20, 2010, Welsh filed this action for judicial review. The Commissioner filed an Answer on November 29, 2010. On January 31, 2011, Welsh filed a brief arguing that there is not substantial evidence in the record to support the ALJ's

---

[1] At the time of the hearing, Welsh was represented by attorney Kenneth F. Dolezal. On appeal, he is represented by attorney Mary Hoefer.

2

finding that he is not disabled and that he could perform other work that exists in significant numbers in the national economy. On March 30, 2011, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On October 7, 2010, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id*.

The Court will "affirm the ALJ's decision if it is supported by substantial evidence on the record as a whole." *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010) (citation omitted). Evidence is "substantial evidence" if a reasonable person would find it adequate to support the ALJ's determination. *Id*. (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)); *see also Wildman v. Astrue*, 596 F.3d 959, 963-64 (8th Cir. 2010) ("'Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000).").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Moore v. Astrue*, 623 F.3d 599, 602 (8th Cir. 2010); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision

"extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Casey v. Astrue*, 503 F.3d 687 (8th Cir. 2007), the Eighth Circuit further explained that a court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 691 (citations omitted). "A decision is not outside that 'zone of choice' simply because [a court] may have reached a different conclusion had [the court] been the fact finder in the first instance." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman*, 596 F.3d at 964 ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Welsh's Education and Employment Background

Welsh was born in 1962. He completed the eleventh grade in high school. At the hearing, Welsh testified that while in school, he was not required to take any special education courses. Later, Welsh earned a GED and an associate's degree in nursing.

The record contains a detailed earnings report for Welsh. The report covers Welsh's employment history from 1990 to 2008. Between 1990 and 1992, Welsh earned between $14,723.96 (1991) and $6,656.27 (1992). He had no earnings from 1993 to 1995. From 1996 to 2004, Welsh earned between $175.50 (1996) and $15,782.53 (2000). He earned $13,655.50 in 2004, his last year of reported earnings.

### B. Administrative Hearing Testimony

### 1. Welsh's Testimony

At the time of the administrative hearing, the ALJ inquired of Welsh why he believed he was no longer able to work. Welsh explained that:

> Well my, well with my shoulders, my tendons are, especially on my left hand side, I've actually had five surgeries and they have been where tendons have either had total tears or partial tears. And my tendons have been stretched out. In fact it was cut down at one point and reattached and they spent six months trying to re-lengthen it. I can't, my tendon tears even while I was in physical therapy in one week. It's torn out of physical therapy just on its own if I move too fast, if I hold it or trying to lift something away from my body my tendon's going to tear. My right hand, I can't use my right hand very well. I've adapted to a few things but I have problems turning on faucets, washing dishes.

(Administrative Record at 57.) Welsh further stated that he can "hardly" do "anything" with his right hand because he doesn't have the strength to "hold on to stuff."[2] Welsh also described significant pain in his right arm and hand due to "uncontrolled nerve impulses."

---

[2] *See* Administrative Record at 58.

Welsh was also asked to describe his difficulties with anxiety:

> A:    Like right now I'm kind of real shaky like. I haven't,
> I haven't been able to go, I haven't been out in public
> much. I started, I don't know why, I used to go
> anywhere at any time and I don't go out in public very
> much anymore. . . . But as far as going to the store
> and places like that, I'm not able, I don't know why.
> I can't get myself to go to like Wal-Mart of [*sic*] Hy-
> Vee. . . . I just don't go out, I don't know why.

(Administrative Record at 64.) Welsh further explained that he has difficulty sleeping at
night due to pain, but also has difficulty sleeping during the day because of his anxiety.
Consequently, Welsh maintains that he is constantly tired throughout the day.

### 2.    *Vocational Expert's Testimony*

At the hearing, the ALJ provided vocational expert Carma Mitchell with a
hypothetical for an individual who:

> can do light work[.] . . . [T]he person can only occasionally
> climb ropes, ladders, scaffolds; occasionally kneel, crouch,
> crawl; can frequently climb ramps or stairs, frequently balance
> and stoop; the person should avoid concentrated exposure to
> extreme cold, to vibrations and to hazards such as moving
> machinery and unguarded heights. There are manipulative
> limitations as follows; with the upper extremity the person
> would only do rare overhead reaching; the person, by the way,
> is left hand dominant. With the right upper extremity the
> person should only have rare overhead reaching but has a
> limitations in handling, fingering and feeling to occasional to
> rare, so less than occasional I suppose for that. . . . There
> should be no driving as a requirement of the job, the person is
> able to do only simple, routine, repetitive work with only
> simple, work related decisions and few work place changes.

(Administrative Record at 78-79.) The vocational expert testified that under such
limitations, Welsh could not perform his past relevant work. The vocational expert further
testified that Welsh could perform the following work: (1) usher (240 positions in Iowa
and 35,200 positions in the nation), (2) information clerk (800 positions in Iowa and

90,200 positions in the nation), (3) shipping weigher (460 positions in Iowa and 29,900 positions in the nation), and (4) conveyor tender (230 positions in Iowa and 12,000 positions in the nation).

The ALJ provided the vocational expert with a second hypothetical for an individual who:

> can do sedentary work . . . but [] is actually even more restricted in lifting, can only occasionally and frequently lift up to five pounds or less. The person should never climb ropes, ladders, scaffolds; only occasionally climb ramps, stairs; occasionally balance, stoop, kneel, crouch and crawl. The person should do no lifting bilaterally above the shoulder, no reaching bilaterally above the shoulder. The person is left hand dominant and has right hand upper extremity limitations in handling, fingering, feeling to occasionally to rare. Should be no driving as a requirement of the job. The person should avoid concentrated exposure to extreme cold, to vibrations, to hazards such as moving machinery and unguarded heights. The person is able to do only simple, routine, repetitive work with simple work related decisions and few work place changes.

(Administrative Record at 80.) The vocational expert testified that under such limitations, Welsh could not perform his past relevant work. The vocational expert further testified that Welsh could perform the following work: (1) surveillance systems monitor (200 positions in Iowa and 33,000 positions in the nation), (2) call-out operator (130 positions in Iowa and 11,100 positions in the nation), and (3) unskilled order clerk (200 positions in Iowa and 17,000 positions in the nation).

### C. Welsh's Medical History

On August 12, 2006, Welsh was involved in a serious motorcycle accident. He was hospitalized for three weeks. While in the hospital, he was treated for extensive abrasions, lacerations, fractured ribs, and a fractured clavicle. Welsh was discharged on September 1, 2006, and continued to be treated with physical and occupational therapy.

On September 14, 2006, Welsh met with Dr. Mark Young, M.D., regarding weakness and paresthesias in his right hand and arm in connection with his motorcycle accident. Upon examination, Dr. Young diagnosed severe right brachial plexopathy. Dr. Young opined that Welsh should have improvement of neurologic function over time, and recommended continued physical therapy and conservative care.

On March 2, 2007, at the request of Disability Determination Services ("DDS"), Welsh met with Michele McNeal, Ed.S. and Joan Jacob, M.A., for a mental status examination. McNeal and Jacob noted that Welsh was diagnosed with anxiety disorder in approximately 1997. McNeal and Jacob further noted that he "has tried a variety of medications with limited success."[3] McNeal and Jacob described Welsh's activities of daily living as follows:

> Currently, [Welsh] struggles completing any task that requires minimal stamina or exertion. He used to enjoy cooking and grilling out, but now struggles 'cutting a pizza slice.' He showers only a few times per week as taking a shower is stressful and exhausting. Getting dressed is difficult as [Welsh] can only use his left arm. . . . [Welsh] understands the purpose of his medications. He is able to estimate prices and count change. He lost his driver's license after his motorcycle accident. [Welsh] is becoming familiar with a computer and internet functions. He must type slowly using only 1 hand.

(Administrative Record at 368.) Upon examination, McNeal and Jacob opined that Welsh had the ability to:

> remember and understand simple and complex instructions, procedures and locations. Without significant improvement with his shoulder, arm and hand pain, and body strength, he will be unable to carry out tasks requiring a minimal degree of physical exertion of his upper body. It is probable [Welsh] will be unable to maintain the pace expected at most competitive jobs. When he is experiencing pain, his

---

[3] *See* Administrative Record at 366.

> concentration and attention to task is negatively impacted.
> When not in a high degree of pain, he does seem to have the
> skills necessary to exercise independent judgment within the
> workplace. He reports a history of positive relationships with
> supervisors and coworkers and presented positive social skills
> throughout [his] interview.

(Administrative Record at 369-70.) McNeal and Jacob diagnosed Welsh with major depressive disorder, generalized anxiety disorder, and history of polysubstance abuse. McNeal and Jacob assessed Welsh with a GAF score of 50.

On March 21, 2007, Dr. David A. Christiansen, Ph.D., reviewed Welsh's medical records and provided DDS with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Welsh. On the Psychiatric Review Technique assessment, Dr. Christiansen determined that Welsh had the following limitations: no restriction of activities of daily living, no difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Christiansen determined that Welsh was moderately limited in his ability to maintain attention and concentration for extended periods. Dr. Christiansen found that Welsh was not significantly limited in any other areas. In his conclusion, Dr. Christiansen focused on McNeal's and Jacob's consultative examination and report, and found that:

> The diagnoses are not well supported, and the [consultative]
> report does not support the GAF score [of 50]. Given the
> information in the report, the impairments do not appear to be
> severe, but giv[ing Welsh] the benefit of the doubt, it is likely
> that he does have significant anxiety, which, to some extent,
> interferes with concentration and memory. No other
> significant deficits are noted.
>
> The record is limited. The allegations are supported to the
> extent of the above assessment.

(Administrative Record at 394.)

On April 16, 2007, at the request of DDS, Welsh met with Dr. Danice F. Klimek, M.D., for a consultative examination. Upon examination, Dr. Klimek determined that Welsh was restricted as follows: He can (1) occasionally lift, push, pull, or carry 15-20 pounds from floor to waist, (2) occasionally lift, push, pull, or carry 20 pounds from waist to shoulder, (3) occasionally lift, push, pull, or carry 10-15 pounds over the shoulder, (4) rarely use his right upper extremity due to bilateral shoulder dysfunction with weakness and numbness in his right upper extremity, and (5) rarely grasp or grip with his right upper extremity. Dr. Klimek also determined that Welsh was restricted to the use of hand tools only.

On April 27, 2007, Dr. James D. Wilson, M.D., reviewed Welsh's medical records and provided DDS with a physical RFC assessment for Welsh. Dr. Wilson determined that Welsh could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Wilson also determined that Welsh could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Dr. Wilson further found that Welsh would be limited in reaching overhead, handling, fingering, and feeling due to his shoulder and hand problems. Dr. Wilson opined that Welsh should avoid concentrated exposure to hazards such as machinery and heights. Dr. Wilson found no visual or communicative limitations.

On October 2, 2007, Dr. Chrystalla Daly, D.O., reviewed Welsh's medical records and provided DDS with a physical RFC assessment for Welsh. Dr. Daly determined that Welsh could: (1) occasionally lift and/or carry 20 pounds, (2) frequently lift and/or carry 10 pounds, (3) stand and/or walk with normal breaks for at about six hours in an eight-hour workday, (4) sit with normal breaks for a total of about six hours in an eight-hour workday, and (5) push and/or pull without limitations. Dr. Daly also determined that Welsh could frequently climb ramps and stairs, balance, and stoop, but could only

occasionally climb ladders, ropes, and scaffolds, kneel, crouch, and crawl. Dr. Daly further found that Welsh was limited to rare overhead reaching and occasional to rare handling, fingering, and feeling due to right traumatic brachial plexopathy and shoulder dysfunction. Dr. Daly opined that Welsh should avoid concentrated exposure to extreme cold and hazards such as machinery and heights. Dr. Daly found no visual or communicative limitations.

On April 24, 2008, Welsh underwent left rotator cuff surgery for a third time.[4] Following the surgery, on July 31, 2008, Dr. Daniel C. Fabiano, M.D., indicated that Welsh could work with the following permanent restrictions: (1) no lifting, pulling, or pushing over 5 pounds, and (2) no above the shoulder reaching. Welsh re-tore his left rotator cuff, and underwent a fourth left rotator cuff surgery on October 9, 2008.

On July 31, 2009, Welsh was referred to Dr. Sunny Kim, M.D., for consultation on bilateral shoulder pain. Welsh reported to Dr. Kim that his shoulder pain ranges from 3/10 to 7/10 to 10/10 on a ten-point scale with 10 being the highest amount of pain. Welsh described the pain as "sharp, stabbing, aching, pins and needles."[5] According to Welsh, the pain interferes with his "ability to sleep, eat, dress, bathe, walk, work, socialize, exercise, and climb stairs."[6] Dr. Kim noted that Welsh:

> feels frustrated. He has had multiple surgeries and continues to have pain at both shoulders. It limits him functionally and impairs his quality of life. He is also a very anxious person to begin with, and this certainly does not help the situation.

(Administrative Record at 836.) Upon examination, Dr. Kim diagnosed Welsh with bilateral rotator cuff tears, and noted that Welsh "remains symptomatic and has had

---

[4] Welsh previously underwent left rotator cuff surgeries in 2002 and 2003. He also underwent a right rotator cuff surgery in 2003.

[5] *See* Administrative Record at 836.

[6] *Id.*

recurring rotator cuff tears despite surgical intervention."[7] Dr. Kim also diagnosed Welsh with right upper limb weakness and anxiety disorder. Dr. Kim recommended platelet-rich plasma injections to both shoulders as treatment. Dr. Kim opined that the platelet-rich plasma injections were "truly [Welsh's] last resort in my opinion, and is a medical necessity in order to improve [his] level of pain and quality of life."[8] Welsh underwent a platelet-rich plasma injection in his left shoulder on August 8, 2009. Dr. Kim opined that the injection might reduce Welsh's chronic shoulder pain, but had "no prediction as to whether it will improve or worsen his functional status. I do feel that it can improve his quality of life."[9]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Welsh is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The five steps an ALJ must consider are:

> (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix"); (4) whether the claimant can return to [his or] her past relevant work; and (5) whether the claimant can adjust to other work in the national economy.

---

[7] *Id.* at 837.

[8] *Id.*

[9] *Id.* at 839.

*Moore*, 572 F.3d at 523 (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v)). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005), in turn quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).

In order to establish a disability claim, "[t]he claimant bears the burden of demonstrating an inability to return to [his or] her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden of proof then shifts to the Commissioner to "show [that] the claimant is capable of performing other work." *Id*. In order to show that a claimant is capable of performing other work, the Commissioner must demonstrate that the claimant retains the residual functional capacity ("RFC") to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) (citing *Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545, 416.945. "'It is the ALJ's responsibility to determine [a] claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and [the] claimant's own description of her limitations.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Welsh had not engaged in substantial gainful activity since August 12, 2006. At the second step, the ALJ concluded from the medical evidence that Welsh had the following severe combination of impairments: status post bilateral rotator cuff repairs, status post bilateral carpal tunnel release, right traumatic brachial plexopathy, depression, anxiety, obesity, and a history of

polysubstance abuse. At the third step, the ALJ found that Welsh did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Welsh's RFC as follows:

> [Welsh] has the residual functional capacity to perform sedentary work . . . except he can occasionally and frequently lift only five pounds or less. He can never climb ropes, ladders or scaffolds. He can occasionally climb ramps and stairs. He can occasionally balance, stoop, kneel, crouch and crawl. He cannot perform lifting or reaching above the shoulder bilaterally. He is left hand dominant and is limited to occasionally to rarely handling and fingering with his right hand. There should be no requirement to drive on the job. [Welsh] must avoid concentrated exposure to cold, to vibrations, and to hazards such as moving machinery and unguarded heights. He can perform simple routine, repetitive work with simple work related decisions and few workplace changes.

(Administrative Record at 24.) Also at the fourth step, the ALJ determined that Welsh could not perform any of his past relevant work. At the fifth step, the ALJ determined that based on his age, education, previous work experience, and RFC, Welsh could work at jobs that exist in significant numbers in the national economy. Specifically, the ALJ found that Welsh could perform the following work: (1) surveillance system monitor, (2) order clerk, and (3) call-out operator. Therefore, the ALJ concluded that Welsh was not disabled.

### B. Objections Raised By Claimant

Welsh argues that the ALJ erred in two respects. First, Welsh argues that the ALJ provided the vocational expert with a faulty hypothetical question because the ALJ failed to include limitations related to his pain, both in the hypothetical question and RFC assessment. Second, Welsh argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT").

### 1. RFC Assessment and Hypothetical Question

Welsh argues that the ALJ failed to properly address his limitations with concentration, persistence, and pace when determining his RFC and questioning the vocational expert. Specifically, Welsh maintains that his pain, when combined with the limited use of his right hand and anxiety disorder, negatively affects his abilities with regard to concentration and pace. The Commissioner argues that the ALJ properly considered Welsh's abilities with regard to concentration, persistence, and pace. Specifically, the Commissioner argues that the ALJ's decision to restrict Welsh to "simple, routine, repetitive work with simple work-related decisions and few workplace changes was sufficient to account for [Welsh's] moderate limitations in concentration, persistence, and pace."[10]

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697(citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to

---

[10] *See* Commissioner's Brief (docket number 15) at 20.

include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In her decision, the ALJ determined that Welsh has moderate difficulties with concentration, persistence, or pace due to pain and anxiety.[11] Based on her findings, the ALJ included the following limitations in her RFC assessment for Welsh and the hypothetical question to the vocational expert: "[Welsh] is able to do only simple, routine, repetitive work with simple work related decisions and few work place changes."[12] In *Brachtel v. Apfel*, a claimant was found to "often" have deficiencies of concentration, persistence, or pace. 132 F.3d 417, 421 (8th Cir. 1997). The ALJ's RFC assessment and hypothetical question to the vocational expert in *Brachtel*, provided that the claimant had the ability "'to do only simple routine repetitive work, which does not require close attention to detail.'" *Id.* (quotation omitted). Upon review, the Eighth Circuit Court of Appeals determined that the limitations requiring the claimant to only do "'simple routine repetitive work, which does not require close attention to detail[,]'" properly accounted for the claimant's deficiencies in concentration, persistence, and pace in the RFC and hypothetical question to the vocational expert. *Id.*; *see also Howard v. Massanari*, 255 F.3d 577, 582 (8th Cir. 2001) (finding that the ability to do simple, repetitive, routine tasks adequately captures a claimant's deficiencies in concentration, persistence, or pace). Accordingly, in this case, the Court finds that the ALJ's determination that Welsh "is able to do only simple, routine, repetitive work with simple work related decisions and few work place changes" adequately accounts for Welsh's deficiencies in concentration,

---

[11] *See* Administrative Record at 23.

[12] *Id.* at 24.

persistence, and pace in both the ALJ's RFC assessment and hypothetical question to the vocational expert.[13] *See Howard*, 255 F.3d at 582; *Brachtel*, 132 F.3d at 421.

Having reviewed the entire record, the Court finds that the ALJ properly considered Welsh's medical records, observations of treating physicians, and Welsh's own description of his limitations in making her RFC assessment for Welsh. *See Lacroix*, 465 F.3d at 887. The Court further finds that the hypothetical question to the vocational expert properly included those impairments which were substantially supported by the record as a whole, including limitations on concentration, persistence, and pace. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. *Vocational Expert Testimony and the DOT*

Welsh argues that the ALJ's ultimate disability determination is flawed because the ALJ improperly relied on vocational expert testimony that was inconsistent with the Dictionary of Occupational Titles ("DOT"). At the administrative hearing, the ALJ provided the vocational expert with a hypothetical question which set forth the following limitations:

> [The individual] can do sedentary work . . . but [] is actually even more restricted in lifting, can only occasionally and frequently lift up to five pounds or less. The person should never climb ropes, ladders, scaffolds; only occasionally climb ramps, stairs; occasionally balance, stoop, kneel, crouch and crawl. The person should do no lifting bilaterally above the shoulder, no reaching bilaterally above the shoulder. The person is left hand dominant and has right hand upper extremity limitations in handling, fingering, feeling to occasionally to rare. Should be no driving as a requirement of

---

[13] *See* Administrative Record at 24.

the job. The person should avoid concentrated exposure to extreme cold, to vibrations, to hazards such as moving machinery and unguarded heights. The person is able to do only simple, routine, repetitive work with simple work related decisions and few work place changes.

(Administrative Record at 80.) Based on this hypothetical, the vocational expert testified that Welsh could perform the following jobs: (1) surveillance system monitor, (2) order clerk, and (3) call-out operator.

Welsh argues that the vocational expert's testimony is flawed because Welsh's RFC, as determined by the ALJ in her hypothetical, is inconsistent with the DOT's job descriptions for surveillance system monitor, order clerk, and call-out operator. In other words, Welsh asserts that the ALJ's RFC places restrictions on him which are inconsistent with the DOT job descriptions, and preclude him from being able to perform the jobs of surveillance system monitor, order clerk, and call-out operator. Specifically, Welsh points out that each of these jobs are classified as sedentary work. Under the DOT, sedentary work is defined as the ability to exert up to 10 pounds of force occasionally. *See* DICOT 379.367-010, 1991 WL 673244 (Surveillance System Monitor description requiring "[e]xerting up to 10 pounds of force occasionally[.]"); DICOT 209.567-014, 1991 WL 671794 (Order Clerk description requiring "[e]xerting up to 10 pounds of force occasionally[.]"); DICOT 237.367-014, 1991 WL 672186 (Call-Out Operator description requiring "[e]xerting up to 10 pounds of force occasionally[.]"). Similarly, the DOT description for order clerk requires frequent handling, fingering, and reaching, and the description for call-out operator requires occasional handling, fingering, and reaching. *See* DICOT 209.567-014, 1991 WL 671794 (order clerk); DICOT 237.367-014, 1991 WL 672186 (call-out operator). Welsh maintains that these descriptions and physical requirements are inconsistent both with his physical abilities and the ALJ's hypothetical question because he is permanently restricted from lifting more than 5 pounds, and is

18

limited in handling, fingering, and reaching above his shoulder to occasionally to rare, and never reaching above his shoulders.[14]

Social Security Regulation ("SSR") 00-4p explains that in making disability determinations, the Social Security Administration relies "primarily on the DOT for information about the requirements of work in the national economy." SSR 00-4p, 2000 WL 1898704 at *2. SSR 00-4p further provides that:

> Occupational evidence provided by a VE [(vocational expert)] . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE . . . testimony rather than on the DOT information.

*Id.*; *see also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (an ALJ cannot rely on vocational expert testimony that conflicts with job descriptions in the DOT, unless there is evidence in the record to rebut the DOT descriptions).

Here, there are clear conflicts between the vocational expert's reliance on the DOT job descriptions and both the ALJ's hypothetical and the limitations and restrictions placed on Welsh found in the medical evidence in the record, including Welsh's lifting limitations and restrictions on handling, fingering, and reaching. *Compare* DICOT 379.367-010, 1991 WL 673244; DICOT 209.567-014, 1991 WL 671794; DICOT 237.367-014, 1991

---

[14] *See* Administrative Record at 80 (hypothetical question); 446 (limitations on handling, fingering, and reaching); 788 (permanent lifting and reaching restrictions).

WL 672186 with administrative record at 80 (hypothetical question); 446 (limitations on handling, fingering, and reaching); 788 (permanent lifting and reaching restrictions).

In these circumstances, and under the Social Security Administration's rules, an ALJ is required to resolve the conflict between the DOT and the vocational expert testimony. *See* SSR 00-4p; *Jones ex rel. Morris*, 315 F.3d at 979. In this case, however, the ALJ failed to address, let alone resolve, the conflicts between the DOT job descriptions and Welsh's permanent 5 pound lifting restriction and his limitations on handling, fingering, reaching. Accordingly, the Court finds that the ALJ failed to fully and fairly develop the record with regard to the vocational expert's testimony; and therefore, the ALJ's ultimate determination that Welsh is not disabled is not based on substantial evidence. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007) (providing that an ALJ also has a duty to develop the record fully and fairly). On remand, the ALJ must fully and fairly develop the record with regard to the vocational expert's testimony, and resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Welsh's RFC in making her disability determination.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where

"the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed fully and fairly develop the record with regard to the vocational expert's testimony, and resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Welsh's RFC in making her disability determination.

## *VI.  CONCLUSION*

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must resolve all conflicts between the vocational expert's testimony, the DOT job descriptions, and Welsh's RFC in making her disability determination.

## *VII.  ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 27th day of July, 2011.

_____
JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA